# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NUMBER 11-568-1 |
| | : | |
| CARMEN BASILIS | : | |

## O R D E R

**AND NOW**, this            day of                          , 2015, upon consideration of the Defendant's Motion to Dismiss the Indictment on Speedy Trial Grounds and the government's response thereto, it is hereby **ORDERED** that the Motion is **GRANTED**. The indictment is dismissed with prejudice.

It is so **ORDERED**.

BY THE COURT:

_____
**HONORABLE JAMES KNOLL GARDNER**
**United States District Court Judge**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **CRIMINAL NUMBER 11-568-1** |
| | : | |
| | : | |
| **CARMEN BASILIS** | : | |

## DEFENDANT'S MOTION TO DISMISS
### THE INDICTMENT ON SPEEDY TRIAL GROUNDS

For the reasons set forth in the accompanying memorandum of law, defendant Carmen Basilis, by and through her attorney, Maria A. Pedraza, Assistant Federal Defender, Federal Community Defender Office for the Eastern District of Pennsylvania, respectfully requests that the Court enter an order dismissing the indictment against her in its entirety. As the delay between the filing of the indictment against Ms. Basilis and her arrest was nearly four years, the government violated Ms. Basilis' constitutional right to a speedy trial under the Sixth Amendment. As a result, she is entitled to relief. The indictment is therefore dismissed with prejudice.

Respectfully submitted,

*/s/ Maria A. Pedraza*
MARIA A. PEDRAZA
Assistant Federal Defender

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA      :
                                   :

              **v.**                    :         **CRIMINAL NUMBER 11-568-1**
                                     :

CARMEN BASILIS                   :

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE INDICTMENT ON SPEEDY TRIAL GROUNDS

Carmen Basilis was indicted on September 27, 2011, for acts which occurred between 2005 and 2008. She was not arrested on this indictment until August 13, 2015. Ms. Basilis moves for an order dismissing the indictment against her on the grounds that the 47-month delay in arresting her post-indictment violated her constitutional rights to a speedy trial under the Sixth Amendment. Dismissal should be with prejudice.

## I.  FACTS AND PROCEDURAL HISTORY

Ms. Basilis' alleged conduct came to the attention of the Internal Revenue Service ("IRS") in 2008.[1] A search warrant was executed on September 17, 2008, at which time all of the files and computers at her place of business, located at 634 W. Tilghman Street, Allentown, Pennsylvania, were seized by IRS agents who entered the premises using a locksmith who changed the locks. Ms. Basilis met with IRS agents on September 19, 2008, at which time she was interrogated and was provided the new keys to the premises which housed her business.

After leaving the IRS offices on September 17, 2008, Ms. Basilis heard nothing further about this matter until her arrest on August 13, 2015. The facts show that between September

---

[1] The facts contained in this paragraph are based on the reports provided by the government to the defense as part of the discovery process.

2008 and August 2015, Ms. Basilis continued to live a normal life. From September 17, 2008

until approximately October 2011, Ms. Basilis lived at 502 South Berks Street, Allentown,

Pennsylvania. This address was provided to IRS agents by Ms. Basilis on September 19, 2008.

See Memorandum of Interview dated September 19, 2008 (annexed hereto as Exhibit A).

Moreover, on that date, Ms. Basilis provided agents with the names and ages of all of her

children, as well as her husband's name, and informed them that he was a retired U.S. military

serviceman receiving retirement benefits from the government as a result of his service and

honorable discharge. The Berks Street address was also the address listed on Ms. Basilis'

driver's license and tax returns, and was even the same address she received visits from an

examiner from the IRS. Additionally, it was the address associated with her husband's Social

Security retirement benefits and also the address under which her children were matriculated in

elementary school.

In October 2011, Ms. Basilis and her family moved to Reading after foreclosure

proceedings were commenced against the Tilghman and Berks Street properties. At that time,

she moved to 109 N. 9th Street, Apt. 1, Reading, Pennsylvania, and updated her Pennsylvania

driver's license to reflect this new address. This was also the address that was used to

matriculate her children in school in Reading. All of her Federal and Pennsylvania tax returns

were filed using this address. At some point in 2012, the bank holding the mortgage for 502

South Berks Street, Allentown, Pennsylvania, held a short sale in Harrisburg, Pennsylvania.

Ms. Basilis attended this sale after being contacted by the bank in order to facilitate the sale of

the property.

In the beginning of 2013, Ms. Basilis and her family relocated to 238 W. Oley Street,

Reading, Pennsylvania. The children's school was updated as to the change of address in order

to insure continuity of school bus transportation. All Federal and Pennsylvania tax returns were filed using this address. Moreover, federal and state income tax refunds were issued to Ms. Basilis during this time to an account registered to the Oley Street address and provided to the tax authorities by Ms. Basilis.

In 2013, Ms. Basilis began receiving public assistance and registered with the appropriate agencies using the Oley Street address. Additionally, Ms. Basilis was receiving rental assistance from the State of Pennsylvania to help cover her monthly rent at the Oley Street address. Ms. Basilis also updated her address with the Pennsylvania Department of Transportation via their website.

In addition to all of these facts, which in and of themselves establish that she was not a fugitive nor acting as such, there exists an even more compelling fact proving this point. Specifically, between 2008 and 2015, Ms. Basilis, a United States citizen, traveled lawfully and extensively between the United States and the Dominican Republic in furtherance of her missionary activities with the Seventh Day Adventist Church. In connection with this travel, she passed through United States Customs and Border Protection inspection points at least 3 times on April 18, 2011, May 30, 2011 and April 12, 2012. All of these dates were after the execution of the search warrant, and the last of these was after the issuance of the arrest warrant.

Thereafter, in 2013, Ms. Basilis renewed her United States Passport book with the United States Department of State. When she completed her application for a renewal, she listed P.O. Box 8562, Reading, Pennsylvania, which was registered with the United States Postal Service using the Oley Street address. Upon receiving a new United States Passport book, Ms. Basilis traveled lawfully and openly to the Dominican Republic on at least one trip in

3

2014 and one in 2015. Her passport was confiscated in April 2015 while at John F. Kennedy International Airport. All of the travel after she renewed her passport was post-indictment and after the issuance of the arrest warrant.

At some point in 2014, IRS Special Agent Annmarie Tyler presented an affidavit to the Honorable Magistrate Judge Henry S. Perkin requesting the issuance of a cell site search warrant in connection with this case. See Search Warrant Affidavit (annexed hereto as Exhibit B). In the affidavit, Special Agent Tyler indicated that Ms. Basilis resided at the Tilghman Street address. Despite the fact that the IRS Agents who interviewed Ms. Basilis on September 19, 2008, clearly documented the Berks Street address as her residence in their memorandum of interview, the affidavit did not mention this address, which is where she resided until October 2011.

The affidavit goes on to confirm that Ms. Basilis changed her address with the United States Postal Service and the Pennsylvania Department of Transportation to the 9th Street address in Reading, Pennsylvania. The affidavit never goes beyond stating that she was not seen at that address, and never specifies the period of time over which agents attempted to locate her at the 9th Street address. Nor does it detail efforts between 2001 and the date of the request of the search warrant to locate Ms. Basilis. The affidavit also confirms that Ms. Basilis filed taxes during the time period following the filing of the indictment but does not indicate the address used in those returns nor whether any efforts were made to locate her at the address listed.

The afternoon of August 13, 2015, Ms. Basilis was arrested as she exited the driveway of 238 W. Oley Street, Reading, Pennsylvania. At the time she was a passenger in a car which was driven by her husband. They were both on their way to their son's school to complete

some school administrative requirements.   Later that day following her arrest, Ms. Basilis had her initial appearance before Magistrate Judge Henry S. Perkin at which the government requested that she be held in pretrial detention based on risk of flight.  Ms. Basilis was held for 3 days at which time she reappeared before Judge Perkin and was released on conditions of release.

## II.    THE APPLICABLE LAW

The 47-month delay in arresting Ms. Basilis violated her rights to a speedy trial guaranteed by the Sixth Amendment.  The government inexplicably delayed arresting Ms. Basilis until August 13, 2015, despite knowing where she resided until October 2011, and having ample methods for determining her whereabouts thereafter, including tax filings with the very agency involved in the investigation of this matter.  As such, the indictment must be dismissed with prejudice.

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . .," U.S. Const. amend. VI, and the government has a constitutional duty to make a diligent, good faith effort to promptly bring a defendant to trial.  *See Smith v. Hooey*, 393 U.S. 374, 383 (1969).  A court faced with an alleged violation of the right to a speedy trial must apply the four-factor test first articulated in *Barker v. Wingo*, 407 U.S. 514, 530 (1972), to determine if a pre-arrest delay violated the defendant's constitutional rights to a speedy trial.  That inquiry focusses on:

> (1) the length of the delay before trial; (2) the reason for the delay and, specifically, whether the government or the defendant is more to blame; (3) the extent to which the defendant asserted his speedy trial right; and (4) the prejudice suffered by the defendant.

5

*United States v. Velazquez*, 749 F.3d 161, 174 (3d Cir. 2014) (citing *Barker*, 407 U.S. at 530-531)). "No one factor is dispositive nor 'talismanic.'" *Hakeem v. Beyer*, 990 F.2d 750, 770 (3d Cir. 1993) (quoting *Barker*, 407 U.S. at 533). Rather, they are "related factors" that "must be considered together with such other circumstances as may be relevant." *Barker*, 407 U.S. at 533.

In *Velazquez*, the Third Circuit reaffirmed the need to apply the factors set forth in *Barker* when it reversed the district court's denial of a motion to dismiss an indictment on speedy trial grounds where there was a nearly 5-year delay and the government's only efforts to find the defendant involved running his name through the National Crime Information Center ("NCIC") database a handful of times despite, as in this case, the availability of other leads. 749 F.3d at 167. The defendant in *Velazquez* first came to the attention of the DEA in June of 2005, a result of a confidential informant ("CI"). *Id.* at 167-68. The defendant and a co-defendant then traveled to Philadelphia to meet with the CI and, in a recorded meeting, made arrangements to deliver 5 kilograms of cocaine to the CI. *Id.* at 168. After this meeting the defendant was not arrested, but the DEA was able to identify him, learned that he had a California driver's license and were able to identify a post office box associated with him. *Id.*

After monitored calls between the CI and the defendant took place, two co-defendants met with the CI and delivered the cocaine and were arrested. *Id.* Although the co-defendants were indicted in August 2005, the Government only filed a complaint and arrest warrant against Velazquez. *Id.* Over the next 5 years, investigators did little more than occasionally run Velazquez's name through the NCIC database. *Id.* at 170-71. It was not until nearly 6 ½ years later that Velazquez was apprehended on an unrelated narcotics charge and was returned to Philadelphia to face trial for the crimes charged in the 2005 indictment. *Id.* at 173.

When Velazquez moved to dismiss the indictment against him on Sixth Amendment speedy trial grounds, the district court denied his motion. *Id.* at 173.   The court concluded that because the government believed it was unlikely to locate Velazquez, it reasonably conserved its resources and waited for further information before pursuing its investigation. *Id.*   After a *Barker* analysis, the Third Circuit reversed the district court's decision and concluded: (1) the length of the delay triggered the need to analyze all four factors; (2) the government was not reasonably diligent in pursuing its investigation; (3) Velazquez was diligent in asserting his speedy trial rights; and (4) the government failed to overcome the general presumption of prejudice that arises in cases of excessive delay. *Id.* at 174-86.   Under these circumstances, the Court concluded that the delay violated Velazquez's constitutional right to a speedy trial, and dismissal of the indictment with prejudice was required. *Id.* at 186.

Another case on point is *United States v. Battis*, 589 F.3d 673 (3d Cir. 2009).  In *Battis*, the Third Circuit considered how to deal with a delay that was partly attributable to the government and partly attributable to the defendant.  Battis experienced a 45 month delay between the filing of the indictment and his trial. *Id.* at 675.  Initially arrested in March 2003 and charged in state court with several crimes, including firearms violations, *id.*, Battis was subsequently indicted in the Eastern District of Pennsylvania in February 2004. *Id.*  After a lengthy delay stemming from the state and federal prosecutors' inability to determine which case should be tried first, the state case was eventually dismissed in September 2006 for speedy trial violations. *Id.* at 676.  In December 2006, defense counsel moved to dismiss the federal indictment on similar grounds. *Id.* at 677.  The district court denied the motion.  Thereafter, Battis was tried in October 2007, and ultimately convicted. *Id.*  On appeal, the Third Circuit vacated Battis' conviction.  Holding that even though it could be argued that only 35 months of

7

the 45-month delay was attributable to the government, the indictment against Battis must be dismissed because the government had not rebutted the presumption of prejudice, as it might have done by "affirmatively prov[ing] that the delay left Battis's ability to defend himself unimpaired." *Id.* at 683.

*Velazquez* and *Battis*, along with each of the *Barker* factors, control the outcome of this case.

### A.    Length of the Delay

The first consideration under the *Barker* test consists of two separate steps. A court is initially required to "whether the delay is long enough that it should trigger analysis of other *Barker* factors." *Velazquez*, 749 F.3d at 174. Then, "[i]f it is, the length of the delay is also separately weighed in the court's analysis of the remaining factors." *Id.* Courts have generally found "'postaccusation delay' long enough to trigger further review of the *Barker* factors 'at least as the delay approaches one year.'" *Velazquez, 749 F.3d at 174* (quoting *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992)). The Third Circuit has held that "a delay of fourteen months is 'sufficient to trigger review of the remaining *Barker* factors.'" *Id.* (quoting *Battis*, 589 F.3d at 678). Once this threshold has been passed and the analysis is triggered, the burden to justify the delay falls squarely on the government. *Id.* (citing *Hakeem*, 990 F.2d at 770).

In this case, the threshold of prejudicial delay is clearly met and analysis of the *Barker* factors is triggered. Between the date of the indictment (September 27, 2011) until the time of her arrest (August 13, 2015), Ms. Basilis resided either at the same address provided to agents at the time they executed the search warrant, or at addresses documented in the usual databases searched by law enforcement, such as motor vehicles and tax agencies, including the IRS which

is investigating this case.  Each of the addresses Ms. Basilis resided at between 2011 and 2015 were updated with the Pennsylvania Department of Transportation which issued her driver's license.  Her most recent address is the same address where she received public assistance, which included rental assistance.   Provided these facts, the nearly 4-year delay between indictment and arrest in this case was, without a doubt, "uncommonly long." *Doggett, id.* at 651.  As such, the Court need only consider the remaining three *Barker* factors.

### B.   Reason for the Delay

The second *Barker* factor – reason for the delay – requires the Court to determine whether the government is more to blame for the delay than the defendant.  Where the government intentionally delays in order to gain an advantage at trial, this factor weighs heavily against the government.  *See Barker*, 407 U.S. at 531.  However, even where the delay is caused by the government's mere negligence, this factor must still weigh against the government, "albeit less heavily," *id.*, because "'ultimate responsibility for such circumstances must rest with the [G]overnment,' since it is the Government's duty to bring a defendant to trial." *Battis*, F.3d at 679 (quoting *Barker*, 407 U.S. at 527, 531).  Furthermore, courts have repeatedly recognized that "[n]egligence over a sufficiently long period can establish a general presumption that the defendant's ability to present a defense is impaired, meaning that a defendant can prevail on his claim despite not having shown specific prejudice." *Velazquez*, 749 F.3d at 175; *see also Doggett*, 505 U.S. at 658.

Here, the government cannot meet that burden.  As in *Velazquez*, the facts of this case involve an extensive record of less than enthusiastic government pursuit.  Yet, instead of admitting to a less than diligent effort on its part in locating Ms. Basilis, the government argues that Ms. Basilis' move from Allentown to Reading is responsible for the delay.  The record

before us establishes that this argument is meritless and ridiculous.  Ms. Basilis did nothing to elude capture or evade detection by law enforcement authorities.  In fact, she filed taxes and received refunds during the time period in question.  The fact that Ms. Basilis updated her driver's license, renewed her passport, matriculated her children in school, and passed through customs lawfully on multiple occasions, strongly negates any inference that she was deliberately concealing her whereabouts or hiding from authorities.  Indeed, had the government simply run a computer checks in their own databases, issued subpoenas or requested investigative warrants for motor vehicle databases, State Department databases, or if they had inquired of the Social Security administration to determine the address to which Ms. Basilis' husband's retirement benefits were being sent,[2] they could have easily found Ms. Basilis for prosecution in a timely manner, rather than the 47-month delay which occurred here. As the government was not reasonably diligent in its pursuit of Ms. Basilis, "th[is] second and most important factor in the speedy trial analysis, strongly favors [Ms. Basilis]." *Velazquez*, 749 F.3d at 186.

### C.     Assertion of the Right to a Speedy Trial

With respect to the third *Barker* factor, "knowledge of the indictment [is] the appropriate measure for the timely assertion of the speedy trial right." *Velazquez*, 749 F.3d at 184.  "[A] motion or some evidence of direct instruction to counsel to assert the right at a time when formal assertion would have some chance of success," *Hakeem*, 990 F.3d at 766, is strong "evidence that the defendant was being deprived of his constitutional right since '[t]he more serious the deprivation, the more likely a defendant is to complain.'" *Battis*, 589 F.3d at 680 (quoting *Barker*, 407 U.S. at 531).  Notwithstanding, "even if a defendant fails to adequately

---

[2]   When interviewed by IRS agents in September 2008, Ms. Basilis provided her husband's name, disclosed that he was a retired U.S. military serviceman, and that he received Social Security retirement benefits.

assert his right to a speedy trial, that means only that the third *Barker* factor will be weighed against him. It does not mean that he cannot claim that his right to a speedy trial was violated." *Id.* at 681.

In this case, Ms. Basilis was not aware of the indictment against her until her arrest on August 13, 2015. The government, in one breath, argues that Ms. Basilis knew she was under indictment "[b]ecause the indictment was not sealed, [and] news of the indictment was published in the Morning Call in Allentown, Pennsylvania;"[3] yet, in another breath, admits it has no "solid evidence which proves that [Ms. Basilis] learned about the indictment from the local news."[4] As the government can offer no definitive evidence as to when Ms. Basilis learned of the indictment, the Court should find that Ms. Basilis did not learn of it until she was arrested in August 2015. This conclusion is amply supported by Ms. Basilis's own actions in the wake of the indictment and the issuance of the warrant. Were her intent to evade detection and arrest, she would have remained in the Dominican Republic after one of the trips she took between 2011 and 2015. Had she been aware of the warrant she would have gone out of her way to stay off the grid rather than out in the open as she so clearly was during this time.

Thus, by filing the instant speedy trial motion within three months of her arrest, Ms. Basilis is timely asserting her right to a speedy trial. *See Velazquez*, 749 F.3d at 184 (defendant's bringing of speedy trial motion within four months of his arrest weighed in favor of dismissing indictment); *Doggett*, 505 U.S. at 653-54 (defendant timely asserted right to a speedy trial where the record demonstrated that he did not know he had been indicted until he was arrested, despite the fact that his parents had been told eight years earlier). Accordingly, this third *Barker* factor squarely favors Ms. Basilis.

---

[3] Government's Memorandum Concerning the Status of the Defendant's Motion to Modify Bail Conditions, p. 4.
[4] *Id.*

**D.**   **Prejudice**

The fourth and final *Barker* factor – prejudice to Ms. Basilis – is assessed "'in light of the interests . . . which the speedy trial right was designed to protect.'" *Battis*, 589 F.3d at 682 (quoting *Barker*, 407 U.S. at 532). A defendant can establish prejudice in two ways, either by showing he was subjected to "'oppressive pretrial incarceration,' that he suffered 'anxiety and concern' about the impending trial, or that his defense was impaired as a result of the delay," *id.* (quoting Barker, 407 U.S. at 532); or, he claim prejudice without providing "affirmative proof of particularized prejudice" if the delay is excessive. *Doggett*, 505 U.S. at 655.

In determining when the delay is so excessive that prejudice is presumed, both the overall length of the delay and the portion of the delay attributable to the government are relevant. *Battis*, 589 F.3d at 682-83. In *Doggett*, the Supreme Court considered both the total length of delay – there, 8-years – and the portion of the delay attributable to the government – 6 years – as warranting a presumption of prejudice. In *Hakeem*, 990 F.2d at 755, the Third Circuit found that a 14-month period between arrest and trial was not presumptively prejudicial; however, a delay of 45 months, in which the government was responsible for 35 months of it, was presumptively prejudicial. *Battis*, 589 F.3d at 683. Likewise, a delay of 6 ½ years, where the defendant was missing but the government was not reasonably diligent in its efforts to locate him, was also presumptively prejudicial. *Velazquez*, 749 F.3d at 186.

Here, the nearly 4-year delay between the filing of the indictment against Ms. Basilis and her arrest, would demand dismissal even absent a showing of particularized prejudice because "excessive delay," such as that in this case, "presumptively compromises the reliability of a trial." *Doggett*, 505 U.S. at 655-56. Indeed, "after such a long delay, witnesses become harder to locate and their memories inevitably fade." *Battis*, 589 F.3d at 683. As recognized in

*Doggett*, the government may try to rebut this presumption, but "it is difficult to do so," *Velazquez*, 749 F.3d at 186, because the importance of such presumptive prejudice "increases with the length of delay." *Doggett*, 505 U.S. at 655-56.  Moreover, when combined with the fact that the protracted delay was wholly attributable to the government's conscious choice to flout rules designed to protect Ms. Basilis' speedy trial rights, the presumption of prejudice – as in *Doggett*, *Velazquez* and *Battis* – should clearly "favor [Ms. Basilis] in the application of the *Barker* speedy trial test." *Velazquez*, 749 F.3d at 186.

## III.   CONCLUSION

For the reasons detailed above, all four of the *Barker* factors weigh heavily in favor of finding that Ms. Basilis was unconstitutionally deprived of her right to a speedy trial. Specifically, the 47-month delay between the indictment and Ms. Basilis' arrest was extraordinary by any measure, and was entirely the result of the government's minimal attempts to find her.   For sure, the government's pursuit of Ms. Basilis was strikingly lethargic, implying that Ms. Basilis' case was "relative[ly] unimportant[ ]." *Doggett*, 505 U.S. at 653. Ms. Basilis is timely asserting her right to a speedy trial, and the government will be unable to overcome the presumption of general prejudice that applies with considerable force in a case, such as this one, where the delay is extraordinarily long.   Consequently, Ms. Basilis is entitled to relief.   The indictment is therefore dismissed with prejudice.

**WHEREFORE**, defendant Carmen Basilis respectfully requests that the Court grant the instant Motion and dismiss the indictment with prejudice.

Respectfully submitted,

*/s/ Maria A. Pedraza*
**MARIA A. PEDRAZA**
Assistant Federal Defender

14

# Exhibit A

**Internal Revenue Service
Criminal Investigation**

**Memorandum of Interview**



| | | | |
|---|---|---|---|
| **In Re:** | Carmen Basilis | **Location:** | 502 S. Berks Street<br>Allentown, PA |

**Investigation #:** 1000216246
**Date:** September 19, 2008
**Time:** 8:57 - 10:19 am
**Participant(s):** Carmen Basilis, Subject
Edward Manning, Special Agent
Mary C Grigoruk, Special Agent

On the above date and time Special Agent Edward Manning and I arrived at the above address to interview Carmen Basilis regarding her income tax preparation business, Basilis Tax Service, and her personal income tax returns as arranged by telephone on September 18th. A search warrant was executed at Basilis Tax Service, 634 W. Tilghman Street, Allentown, PA on September 17, 2008. Special Agent Manning and I identified ourselves as special agents with the Internal Revenue Service, Criminal Investigation, and displayed our credentials.

I explained to Ms. Basilis that a search warrant had been executed on her business and that a locksmith was used to gain access to the property. I provided her with the keys to the front door and the second floor door. Ms. Basilis acknowledged the receipt of the keys and signed a receipt for them. I also showed Ms. Basilis a copy of the search warrant and the attachment of items seized. She told me she had a copy of both. Ms. Basilis stated that the house (634 W. Tilghman Street) is empty because she has three children and only does taxes for five months. She stated she has been doing taxes for a couple of years.

I explained to Ms. Basilis that she was the subject of a criminal investigation regarding her tax preparation business and her income tax returns and that I wanted the ask her questions pertaining to these items. I informed Ms. Basilis that she was not under arrest but that I was required to advise her of her Constitutional rights prior to asking her any questions. I advised Ms. Basilis of her non-custodial rights by reading from Document 5661. Since she is a Spanish speaker, I also provided Ms. Basilis with a photocopy of Document 5661A, advice of non-custodial rights, in Spanish. Ms. Basilis stated she understood her rights and signed the photocopy of the rights. I provided Ms. Basilis with a copy of the rights.

Ms. Basilis provided the following information in response to questions.

1. Her full name is Carmen Yolanda Basilis Espino and her social security number is 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. She was born on February 7, 1964 in the Dominican Republic. She came to the United States in 1995 and obtained her citizenship in the United States in 2001 or 2002. She resides at 502 S. Berks Street, Allentown, PA and the telephone number is 610-351-4245. She moved to this address approximately two years ago. She is the only owner.

2. Ms. Basilis is married to George Hernandez and has been for approximately 13 years. Hernandez is a US citizen and served in the Navy. He is a realtor with ReMax Realtors in Whitehall. They have three children, George Hernandez, 12 years old; Ashley Hernandez, 10 years old and Brian Hernandez, 8 years old. She also has a daughter, Guadalupe Basilis, who resides in the Dominican Republic. Basilis and Hernandez were separated for approximately three years and lived in separate homes. Recently Hernandez moved into the 502 S. Berks Street residence.

3. Ms. Basilis was a lawyer in the Dominican Republic and attended the UTECI. She practiced general law for approximately five years. After arriving in New York she attended community college for English. In 2001 she obtained her income tax preparation training through Jackson Hewitt in New York. She stated she likes to do taxes because she only has to work for a few months since she has young children.

4. Ms. Basilis worked for Jackson Hewitt in New York prior to moving to Allentown. She came to the Allentown area after 9/11 and was working for Jackson Hewitt on 8th Street, between Linden and Hamilton Streets, in Allentown. She prepared returns at 26 S. Madison Street, Allentown after leaving Jackson Hewitt in approximately 2003 or 2004. She then moved to the Tilghman Street address. She owned 634 W. Tilghman Street and transferred it to her husband approximately two years ago. He is the present owner of the property. The Tilghman Street property is not a commercial property. Because of this, customers must call and schedule appointments to have the returns prepared. She closes the office in May and returns once a week. She is also a realtor and was associated with Keller Williams.

5. Ms. Basilis only prepares tax returns. She does not provide any other services. Most of the returns are prepared on the computer and are e-filed with the IRS. She does prepare a few paper returns. She does maintain copies of the returns she prepares. She applied for an EFIN in 2002 or 2003 and believes the number to be 23772. She is the only preparer and prepares about 100 or so returns a year. She obtains her clients through referrals. The number of clients goes up each year due to the referrals.

6. To prepare the returns, her clients bring social security cards, birth certificates, W-2s and receipts for expenses and photo id. She always asks for photo id and social security cards. For Schedule A preparation, clients bring in 1098 for interest and taxes. She reviews the return with the client when completed. She returns worksheets to the clients.

7.    Most clients get Refund Anticipation Loans (RALs). These are through River City Bank. Basilis receives her fee by direct deposit from River City into her business account at Lafayette Bank. Her account number is 7142021. Her business expenses come out of this account.

8.    Basilis puts the numbers on the returns. She stated that people know that the more expenses they have the bigger the refund. She stated she does not put down expenses without verification. However, she then stated that she does take clients' word for the amount but tells them they must have the documents for the amount. When asked if she ever made up amounts to put on returns, Ms. Basilis stated that she did not.

9.    At this time I informed Ms. Basilis that there is a tape where she prepares a return for an individual and includes approximately $15,000 in undocumented expenses without discussing the expenses with the client. I also explained that the client did not have any expense documentation in his/her possession. I further explained that the return she prepared resulted in a refund of about $1,000 when a correctly prepared return would have resulted in a tax due. I further informed her that a majority of the returns she prepared contained extraordinarily high miscellaneous deductions. Ms. Basilis asked if it was her voice on the tape and I told her that it was.

10.   When reminded of the fact that she was trained in return preparation by Jackson Hewitt, particularly in the area of itemized deductions, Basilis stated that Jackson Hewitt never told her that she could not put these amounts on tax returns. She further stated that the government, the IRS, "never told her that she could not do this". She said that she never thought that what she was doing was wrong. She would calculate expenses for the clients and put them down. She never thought that it was a bad thing.

11.   Basilis was again asked about putting large amounts of miscellaneous deductions on the Schedule A. She repeated that Jackson Hewitt did not tell her she could not do this and the IRS never told her she could not do this.

At this time I explained the investigative process to Ms. Basilis as well as the penalties for aiding in the preparation of false income tax returns. I gave Ms. Basilis my business card and told her if she had any questions, concerns, or wanted to talk to me regarding the investigation to call me at the number on my card. The interview was concluded at this time.

*Mary C Grigoruk*
Mary C Grigoruk
Special Agent

*Edward Manning*
Edward Manning

I prepared this memorandum on September 19, 2008, after refreshing my memory from notes made during and immediately after the interview with Carmen Basilis.

*Mary C Grigoruk*
Mary C Grigoruk
Special Agent

# Exhibit B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN THE MATTER OF THE SEARCH OF | : | Case No. _14-919-M_ |
| THE CELLULAR TELEPHONE ASSSIGNED | : | |
| CALL NUMBER 484-219-9973 SPRINT | : | **Filed Under Seal** |
| (BOOST MOBILE) | : | |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, ANNMARIE M. TYLER, being first duty sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rules of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number 484-219-9973 ("The Target Cell Phone").

2. The service provider for the Target Cell Phone is Sprint Boost Mobile[1] ("Sprint"), a wireless telephone service provider headquartered at 6460 Sprint Parkway, Overland Park, KS. 66251, fax number 816-877-3100. The Target Cell Phone is described herein and in Attachment A. The location information to be seized is described herein and in Attachment B.

3. I am a Special Agent with the Internal Revenue Service's Criminal Investigations. I have served in this capacity since June 1995. As a special agent, my duties primarily include the investigation of violations of Title 26 and 31 of the Federal Criminal Code as well as selected provisions of Title 18 of the Federal Criminal Code.

---

[1] Sprint Boost Mobile is a pre-paid type of cell phone.

1

4.   My educational background includes training in tax related matters and law enforcement at the Federal law Enforcement Center in Glynco, Georgia and Artesia, New Mexico. I have also completed four phases of the IRS Revenue Agent Training at the IRS's Philadelphia District Field Office.

5.   In the course of my employment with the IRS, I have participated in more than 100 investigations of alleged tax violations and the executions of more than 75 search warrants.  I have also participated in joint investigations with other federal agencies that resulted in the successful prosecution of numerous individuals as well as the forfeiture of assets and proceeds which inured to the United States.

6.   I have served as the Acting Supervisory Special Agent in the IRS Scranton, Pennsylvania office.  I have also served as the IRS Philadelphia District's corporate fraud coordinator and as coordinator of the Voluntary Disclosure International Program in the IRS New York District and as a Centralized Case Reviewer for the New York and Pittsburg Field Offices.

7.   The facts in this affidavit are based on my personal observations, training, experience and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## **PROBABLE CAUSE**

8.   Based on the facts set forth in this affidavit, there is probable cause to believe that CARMEN BASILIS has violated Title 26, United States Code, Section 7206(2) (willfully aiding and assisting in the preparation and filing materially false tax returns).  On September 27, 2011, a federal grand jury in and for the Eastern District of Pennsylvania returned a 58-count

indictment against CARMEN BASILIS which charged her with violating the aforementioned statute.

9.   During the period of 2005 through 2008, CARMEN BASILIS prepared materially false federal income tax returns, IRS Forms 1040, for a number of individuals. The returns included materially false IRS Schedules A and C.

10. The false tax returns, and accompanying false Schedules A and C, included tax credits and expense deductions which the filers were not legally entitled to claim in support of their requests for tax refunds

11. Probable cause also exist to support the belief that the location information described in Attachment B will assist law enforcement officers in locating CARMEN BASILIS so that she can be arrested based on the indictment.  CARMEN BASILIS is a "person to be arrested" within the meaning of Federal Rule of Criminal procedure 41(c)(4).

## OUTSTANDING ARREST WARRANT

12.   In connection with her indictment, a warrant was issued for CARMEN BASILIS's arrest.  At the time that the warrant was issued,  CARMEN BASILIS was living at 634 Tilghman Street, Allentown, PA 18102.

13. CARMEN BASILIS vacated the Tilghman Street property. She did not leave a forwarding address for her mail or other contact information.  IRS agents conducted surveillance as late as January 18, 2013 at which time CARMEN BASILIS was not living at the Tilghman Street address.

14. Following numerous unsuccessful attempts to locate CARMEN BASILIS, IRS agents

3

contacted the United States Marshal for the Eastern District of Pennsylvania and requested that

CARMEN BASILIS's name by placed in the fugitive location system. That information

continues to be effective.

15. Your affiant learned that CARMEN BASILIS moved to the Reading Pennsylvania

area at an unknown date during the period of June 2011 and December 2012. The move was

confirmed by the fact that CARMEN BASILIS obtained a post office box mailing address. That

address is P.O. Box 8562, Reading, Pennsylvania 19603. CARMEN BASILIS continues to use

the Box 8462 mailing address in Reading, Pennsylvania.

16. On or about December 19, 2012, the Pennsylvania Department of Transportation

issued CARMEN BASILIS a Pennsylvania Driver's License and updated her address to reflect

the 109 North 9th Street, Reading, PA A19601 address.

17. The driver's license photograph taken of CARMEN BASILIS was obtained in

Reading, Pennsylvania. The address of 109 North 9th Street, Reading, Pennsylvania 19601 was

listed on the documents required to obtain the photograph.

18. Your affiant's review of Pennsylvania Labor and Industry Records indicate that

CARMEN BASILIS was employed by Aerotek, Inc., a temporary employment agency in the

first quarter of 2014. CARMEN BASILIS provided cellphone number 484-219-9973 to the

Pennsylvania Department of Transportation and Aerotek, Inc. She also provided the same cell

phone number to Experian Credit Reporting agency.

19. On or April 14, 2014, CARMEN BASILIS electronically filed a 2013 federal

income tax return. The IP address assigned to the computer used to file the return was

174.60.49.77. This particular IP address was a "static site," that is, an IP address that was not

permanently assigned to the computer that was used to file the return.

4

20.  With the assistance of Comcast Cable Service, an investigation of the IP address associated with the computer at the time that the tax return was filed, the IP address, location-wise, was in and around Latitude 40.3377 and Longitude -75.9769 which is located in Reading, Pennsylvania.

21. As of August 1, 2014, CARMEN BASILIS has continued to receive mail at 109 North 9th Street, Reading, Pennsylvania 19601 according to the United States Postal Inspection Service.

22. According to a postal mail carrier, CARMEN BASILIS has been seen at the North 9th Street address, but not on a consistent basis.  In speaking with the postal mail carrier, the carrier stated he could not recall the dates or times that he last time he saw Basilis at the 109 North 9th Street.  The agents have surveiled this address on a periodic basis but the agents have not seen Basilis.

23. Based on information received from the United States Postal Inspection Service, George Hernandez is listed as a business associate of Carmen Balisis.  Hernandez is the father of several of Balisis's children.  Balisis and Hernandez use the same cross reference addresses in the Reading Pennsylvania Area which is (a) 238 West Oley Street, Reading, Pennsylvania 19601 and (b) 630 Weiser Street, F12, Reading, Pennsylvania 19601. The agents have visited both addresses multiple times, but have not seen Balisis at either address.  The agents did not contact Hernandez out of concern that he would alert Balisis that law enforcement officers were searching for her.

24. Location of the cell phone tower will provide your affiant with information about the general vicinity that Carmen Balisis might be located when her cellphone is in use.  This location information would permit the agents to surveil the geographical area near the location of the cell

5

phone tower which increases the possibility that Balisis will be seen thus enabling the agents to arrest her.

25. The Targeted Cell Phone, referenced in this affidavit, is the cellphone assigned to call number 484-219-9973.

26. Based upon my training and experience, I know that cell phones serviced by the Service Providers, such as Sprint, are typically equipped with the type of factory installed technology that enables the Service Provider to collect precise location information from a cellphone (a/k/a "latitude-longitude, E911, Global Position Satellite "GPS" information) by initiating a signal to determine the location of the Target Cell Phone on Sprint 's network, or with such other reference points as may be reasonable available.

27. Based on my training and experience, I know that Sprint can also collect cell-site data about The Target Cell Phone.

28. Because it is possible that CARMEN BASILIS may change cellphone service during the period of that she remains a fugitive, your affiant requests that the warrant, and the investigative order which is sought with this affidavit, apply without the need for a further order to a successor service provider who may provide services to CARMEN BASILIS during the relevant time frame referenced in this affidavit.

## AUTHORIZATION REQUEST

29. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

30. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rules of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 45 days after the collection authorized by the warrant has been completed.  There is reasonable

6

cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2703.

31. Providing immediate notice to the subscriber or user of The Target Cell Phone would seriously jeopardize the ongoing investigation as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1).

32. As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

33. I further request that the Court direct Sprint to disclose to the government any information described in Attachment B that is within the possession, custody, or control of Sprint.

34. I also request that the Court direct Sprint to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Sprint's services, including by initiating a signal to determine the location of the Target Cell Phone on Sprint's network, or with such other reference points, as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate Sprint for reasonable expenses incurred in furnishing such facilities or assistance.

35. I further request that the Court authorize execution of the warrant at any time or day or night, owing to the potential need to locate The Target Cell Phone outside of daytime hours.

Respectfully submitted,

ANNMARIE M. TYLER
Special Agent
Internal Revenue Service
Criminal Investigation

Subscribed and sworn to before me

this _2nd_ day of _Sept_ , 2014

HONORABLE HENRY S. PERKIN
UNITED STATES MAGISTRATE JUDGE

8

## CERTIFICATE OF SERVICE

I, Maria A. Pedraza, Assistant Federal Defender, Federal Community Defender Office for the Eastern District of Pennsylvania, hereby certify that I have filed and served a copy of the Defendant's Motion to Dismiss the Indictment on Speedy Trial Grounds, by electronic notification and/or hand delivery upon Floyd J. Miller, Assistant United States Attorney, to his office located at 615 Chestnut Street, Suite 1250, Philadelphia, Pennsylvania 19106.

/s/ Maria A. Pedraza
MARIA A. PEDRAZA
Assistant Federal Defender

DATE:        November 18, 2015